13338

STATE v. JONES
(162 S. E., 466)

Messrs. *C. N. Sapp, C. T. Graydon* and *J. P. Richards,*
for appellant,

Mr. *Randolph Murdaugh, Solicitor,* for respondent,

January 28, 1932.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE BLEASE.

With one exception, a very important one, I am in accord
with the legal conclusions expressed in the opinion of Mr.
Justice Stabler. The exception is such as to compel the con-
clusion on my part that the conviction of the appellant should
be reversed, and as to it alone I shall express my views.

The appellant was indicted, tried, and convicted for violat-
ing the provisions of Section 258 of the Criminal Code, in
that he, as alleged in the indictment, "did knowingly, will-
fully and unlawfully borrow from the First Bank & Trust
Company, a banking corporation organized and existing
by and under the laws of the State of South Carolina, with
its principal place of business in the City of Lancaster,
County of Lancaster, and State of South Carolina, and the
said Ira B. Jones, Jr., being then and there a director of the
said First Bank & Trust Company, the sum of One Thou-
sand One Hundred Seventy-one and 40/100 ($1,171.40)
Dollars, without good security being given therefor, and
without same having been approved in writing by two-thirds

of the whole Board of Directors of the First Bank & Trust Company."

The "borrowing" from the bank, alleged in the indictment, was by the way of overdrafts, the several amounts aggregating the total sum specified in the indictment. The offense alleged against the appellant was charged to have been done by him "knowingly, willfully and unlawfully." I disagree with the proposed holding in the opinion of Mr. Justice Stabler that "there was sufficient evidence to go to the jury as to whether or not the borrowing was *consciously and knowingly done*" (italics mine), and, therefore, in violation of the statute.

A brief, and what I think is a fair, résumé of the evidence on the part of the state is as follows:

The first witness was Mr. W. C. Rion, a public accountant, employed by the County Commissioners of Lancaster County to make an audit of the insolvent bank after it had closed its doors. Through this witness, the state introduced records and books of the bank and showed from the ledger account of the appellant that at the time the bank closed he was overdrawn in his account to the amount of $1,171.40, the total being made up from several paid checks running from December 23, 1927, to July 24, 1929. The last day mentioned was that when the bank closed. The books and records of the bank, according to Mr. Rion, failed to show that the appellant had secured the written approval of the board of directors of the bank to his overdrafts. Mr. Rion. testified that the books of the Receiver (the appellant was Receiver) showed that the amount of the overdraft had been paid after the bank closed by the appellant through commissions received by him from the receivership.

Mr. Scarborough, who was connected with the state banking department, testified that he assisted in the audit of the bank; that he was familiar with the appellant's signature, and identified his signature on two papers offered in evi-

dence, such papers being, as I gather from the record, reports of the bank to the state bank examiner.

Mr. C. W. Calhoun, also connected with the state banking department, testified that, in the course of an examination of the bank's affairs made by him, he had a conversation with the appellant, the time of the conversation however, not being recalled, in which the appellant had told the witness that "he (the appellant) had worked in there (the bank) a good many years ago; and * * * he might have worked in there one or two days at odd times when some of the help was off."

Neither of these three witnesses, Messrs. Rion, Scarborough, or Calhoun, knew anything of the transactions of the appellant with the bank before it closed, except from what was disclosed by the records.

Mrs. Mary C. Humphries, who was employed for some time as teller in the bank, on her examination in chief for the State, testified only as to the signature of the appellant, as a director, on a statement of the bank to the State Bank Examiner, made on March 27, 1929. Mrs. Humphries did not testify at all concerning the overdrafts of the appellant.

On her cross-examination, Mrs. Humphries testified positively that the appellant, from 1922 until the closing of the bank, was not employed in the institution in any capacity, and did not work therein. She testified with equal positiveness that the appellant was employed, for several months prior to the closing of the bank, by the bank "as manager of the Lancaster News and the Insurance Agency," and that "the bank was paying him for working" in those capacities.

No officer whatever of the bank with authority to make loans or to permit overdrafts testified in the case. There was no evidence from any one on the part of the State to show that the overdrafts charged on the bank's books against the appellant's account were true and correct. Also, there was no evidence on the part of the prosecution tending to show that

the appellant was ever given any notice that his account was overdrawn, and absolutely no evidence to show that any demand for payment of any overdraft was ever made. *There was an absolute failure on the part of the State to show that the appellant at any time had any knowledge of any overdraft being charged to his account.*

The appellant was the only witness offered in his defense. His testimony was to the following effect: That he was never an employee in the First Bank & Trust Company, but that he was assistant cashier of the predecessor of that institution, the First National Bank; that he had not worked in either of the banks since 1922; that some years back, about 1922, he had owned some stock in the bank, which he had sold to his brother, Charles D. Jones, the president; that from that time until the bank closed he was not a stockholder; that his father, Ira B. Jones, Sr., at the time of his death in December, 1927, was the owner of fifty shares of the bank's stock; that the appellant was appointed administrator of his father's estate; that he had never attended a meeting of the stockholders or directors of the bank, had not qualified as a director, and had not been notified, except as herein stated, of his election as a director; that after his father's death, and he had become administrator of the estate, he was asked by the cashier of the bank, as a representative of his father's estate, to attest a report of the bank's condition to the State Bank Examiner, which he did on the belief that he should do so as administrator of the estate; and that he learned later, after the bank closed, that some of his father's stock had been transferred to him on the books of the bank, which information he did not have at the time he signed the statement to the State Bank Examiner. From December, 1927, to July, 1929, he was employed by the president of the bank to edit and manage the newspaper known as *"The Lancaster News"* and to manage the Lancaster Insurance Agency, both of which were owned by the Lancaster Security Company, the security company being owned

by the bank; that the bank was his employer, and agreed to pay him salary at $200.00 per month for his services, the salary to be deposited to his credit monthly in the bank; that he received no other compensation for his services except the salary, and all moneys collected from the newspaper business and insurance agency were deposited in the bank. Appellant swore that he did not borrow, or intend to borrow, the moneys charged as overdrafts to him from the bank; that he had never been notified that his account was overdrawn, and no demand for payment of any overdraft was ever made on him; that he drew on his account to the amount of $1,-171.40, believing that his monthly salary payments had been placed to his credit according to the agreement made. After his election as receiver by the depositors of the bank, he ascertained that he was charged with an overdraft, and because of some adverse criticism and to keep his receivership from embarrassment, he decided to pay the overdraft appearing on the books, and to file claim for the amount so paid by him, as well as the balance due him on his salary account, in the receivership, and ask the approval of the Court for its payment; and at the time he made the payment it did not occur to him that he would be prosecuted on account of the overdraft, and if he had been so informed, he would not have paid the overdraft.

In no particular was the testimony of the appellant disputed. In one important respect, he was corroborated by the State's witness Mrs. Humphries as to his employment by the bank to manage the newspaper and the insurance agency. While the record discloses that the president of the bank, with whom the appellant claimed to have made his agreement, had died before the trial, it appears that at least one other officer of the bank, the cashier, might have given evidence contradictory to that of the appellant, if the facts were not in accord with the appellant's statement. It may have been possible also to have shown by other evidence the untruthfulness of the appellant's testimony, if it was un-

true, but that at this time is not a matter for the attention of this Court.

I recognize fully the rule, so repeatedly announced by this Court, that, in considering whether or not a criminal case should have been submitted to the jury, we are not to regard so much the evidence favorable to the defendant, but are required to see if there was any evidence so pointing to his guilt as to make the issue one for the jury.

With that rule in mind, I disregard the evidence favorable to the appellant—having recounted it only for the purpose of giving a fair statement as to both sides of the cause.

Considering only the evidence upon which the State based its right to a conviction, I find it adduced evidence as to only the following things: (1) That the appellant at the time of the alleged overdrafts, or some of them, was a director of the bank, either *de jure* or *de facto;* and (2) that he overdrew his account in the bank as shown by the books of the institution.

Proof of those two things was necessary to bring about the appellant's conviction. But another important element, or factor, in the crime alleged against the appellant was not established, namely, some proof by the State that the overdrafts were *loans* by the bank to the appellant, and that these loans, or at least one of them, were "consciously and knowingly" obtained. There was not a single bit of evidence to show that the appellant had any knowledge that he had "overdrawn his account," or that he was conscious in any way of such fact.

If it is right to hold that the appellant was guilty of a violation of the criminal law, under the evidence adduced against him in this case, it would mean that any director of a bank could be convicted of the violation of the statute upon mere proof from the books of a bank that his account appeared thereon to be overdrawn. A holding to that extent would mean that one who happened to be a director of a bank could be convicted of violation of the terms of the statute if

a bank clerk had honestly made a mistake in the director's account. Such a holding would place every bank director at the mercy of a dishonest bookkeeper. I cannot conceive that the statute, which, so far as I am advised, has not heretofore been construed by this Court, intended such direful consequences. The State before asking the conviction of a director of a bank, charged with the offense of borrowing money from his institution in a manner not allowed by the statute, should be required to show that the overdraft was not a mere error, but that the director not only borrowed in that manner, but intended to borrow, from the bank—that his purpose was to make himself debtor to the bank.

I do not find in the record a motion for the direction of a verdict on the ground that the State failed to show that the borrowing was consciously and knowingly done, and, for that reason, this Court should not order a directed verdict in appellant's favor. There was a motion for a new trial on the ground mentioned, and, in my opinion, the same should have been granted. The State may be able, although that is a matter with which this Court is not now concerned, to supply the important evidence, which, in my opinion, it has so far failed to do. Accordingly, I am of the opinion that the judgment of conviction should be reversed, and the case remanded for a new trial.

A majority of the Court so agreeing, it is the judgment of this Court that the judgment of the Court of general sessions of Lancaster County be, and the same is hereby, reversed, and the cause is remanded for a new trial.

Mr. Justice Carter concurs in result.

Mr. Acting Associate Justice John I. Cosgrove concurs.

Mr. Justice Stabler dissents.

Mr. Justice Cothran did not participate on account of illness.

Mr. Justice Carter (concurring) : In concurring in the result of the opinion of the Chief Justice in this case, I de-

sire to state that I fully agree with what he says regarding the absence of testimony to establish the charge that the defendant knowingly and consciously borrowed money from the bank in question in violation of law, and also as to the principle that should govern in such cases. As I view the record, even if it be conceded that the defendant was a director of the bank at the time in question, within the meaning and intent of the statute involved, which is doubtful, the only reasonable inference to be drawn from the testimony is that the defendant did not knowingly, willfully, and unlawfully borrow money from the said bank, as charged in the indictment, by way of a loan, overdraft, or otherwise; and, the State having failed to establish such alleged and necessary fact to warrant a conviction. I think the defendant is entitled to a new trial. I express no opinion as to the other questions raised by the appeal.

MR. JUSTICE STABLER (dissenting) : The defendant, Ira B. Jones, Jr., appeals from a conviction in the Court of General Sessions for Lancaster County in July, 1930, on a charge of violating Section 258 of the Criminal Code, the indictment in the case alleging that on July 23, 1929, he knowingly and unlawfully borrowed from the First Bank & Trust Company of Lancaster, S. C., of which he was then a director, the sum of $1,171.40, without giving good security therefor and without the written approval of two-thirds of the whole board of directors.

Error is imputed to the trial Judge in admitting in evidence the alleged minute book of the bank and in allowing testimony as to its contents. The State offered this book in evidence through its witness Rion, a public accountant, who had audited the books after the closing, and who testified that the book in question had come into his hands along with the records of the bank, the purpose being to show by the minutes of December 23, 1927, that the defendant on that day had been elected a director of the bank. Defendant's counsel objected to the admission of these minutes on the

ground that they were not signed by the secretary or attested by the president and that there was no evidence of their authenticity, but the Court admitted them subject to being stricken out later in the trial, if not sufficiently connected up. No motion to strike out was thereafter made, and even if their admission was error—which we do not concede—an exception based thereon cannot be reviewed here. *Armstrong v. Atlantic Coast Line R. Co.*, 137 S. C., 113; 133 S. E., 826, 48 A. L. R., 482.

In order to prove the alleged unlawful borrowing, the State placed in evidence, through Rion, the ledger sheet showing the defendant's account with the bank, and the witness testified, from this sheet, that on December 23, 1927, defendant had an overdraft of $75.47, and on July 24, 1929, the date of the bank's closing, an overdraft of $1,171.40—the difference, of course, having been accumulated on various intervening dates. The appellant assigns error to the trial Court in permitting the witness Rion to testify as to the amount of the gross overdraft, in that the defendant was charged in the indictment with having borrowed on a specific date a certain amount of money. This objection cannot be sustained. It is elementary that, unless time is of the essence of the offense, it is not necessary for the State to show that a crime was committed at the exact time laid in the indictment, any time prior to the finding of the true bill being sufficient. *State v. Anderson*, 59 S. C., 229, 37 S. E., 820; *State v. Prater*, 59 S. C., 271, 37 S. E., 933.

The appellant also complains of error in the refusal to direct a verdict for him on the ground that there was a material or fatal variance between the proof and the indictment, in that the evidence shows that he did not borrow any money on the 23rd day of July, 1929, or within several days of that date, and in that it failed to show that he borrowed, directly or indirectly, from the bank the amount alleged in the indictment, referring, on the contrary, to an accumulated overdraft, part of which was in existence prior to the time at

which the State claimed that he became a director. We see no reason why an unlawful borrowing could not be made through an overdraft. When one draws a check on a bank and the check is presented and paid, the drawer not having sufficient funds on deposit to meet it, the relation of creditor and debtor is established—the bank has made a loan and the drawer has become a borrower. In such case, if the other elements of unlawful borrowing exist, then the statute has been as clearly violated as if a note had been given and the money borrowed regularly. Defendant, having been appointed receiver of the bank after its doors were closed, was in position to procure complete information from its records regarding the state of his account, and could not possibly have been taken by surprise by proof of the overdrafts. Nor was it necessary for the State to prove the borrowing of the entire amount alleged in the indictment, the amount borrowed not being material, and the borrowing of any money whatever without compliance with the statute constituting a misdemeanor. It is to be observed also that when the ledger sheet was offered in evidence defendant's counsel stated that he did not object to the admission of the whole sheet but objected to any entry prior to December 23, 1927, whereupon the Court told the jury that they could consider only the entries made from December 23, 1927, to the date of the bank's suspension.

Complaint is also made of the refusal to direct a verdict for the defendant on the ground that there was no testimony that he was ever notified of the overdraft or requested to pay it, the error being that in order to convict him it was necessary for the State to show that the borrowing was done consciously and knowingly. The exception raising this question is without merit. There was sufficient evidence to go to the jury as to whether or not the borrowing was consciously and knowingly done, and in deciding this question they could consider all the facts and circumstances bearing upon it as brought out in the evidence.

The appellant takes the further position that the statute here involved, being a criminal statute, must be strictly construed and, therefore, does not apply to a *de facto* director but only to a *de jure* director, and that the State did not prove that he was a legally elected and qualified director. In addition to the evidence of the minutes of December 23, 1927, already referred to, the record shows that defendant signed as a director certain official statements issued by the bank after that date, that ten shares of stock stood on the books in his name at the time the bank was closed—although he testified that he had sold these shares in 1922—and that in a suit brought by him as receiver of the bank to recover the statutory liability from stockholders, he named himself as a party, alleging that he was the owner of ten shares of stock. This evidence was clearly sufficient to justify the jury in finding either that defendant was a *de jure* director or that he was a *de facto* director—it might even be held that he would be estopped, as a matter of law, to deny the legality of his election and tenure. The same evidence, in a proper civil case, would be entirely sufficient to bind him as a director, and we see no reason why the rule governing in civil cases should not be applicable here. Members of the public doing business with a bank may, if their rights are thereby affected, hold *de facto* directors liable as directors, and obviously the State, in its effort to protect its citizens and the public through enforcement of its statutory regulations, should be entitled to the benefit of the same rule. We think such view is entirely consistent with the general rule that criminal statutes are to be strictly construed.

Finally, error is assigned to the trial Judge in charging the jury that by the plea of not guilty the defendant said, "I didn't do it," since such charge took from the jury the questions as to whether or not the acts done by the defendant were legal and justified and as to whether or not he was "a legal director within the law." When the language complained of is read in connection with the charge as a whole,

it is seen at a glance that there was no prejudicial error. All issues in the case were submitted to the jury under proper instructions.

In my opinion, the exceptions should be overruled, and the judgment of the Circuit Court should be affirmed.